UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CLEAN HARBORS ENVIRONMENTAL                    CIVIL ACTION
SERVICES, INC.

VERSUS                                         NUMBER: 10-3224

R&R CONSTRUCTION SERVICES, L.L.C.              SECTION: "F"(5)


**REPORT AND RECOMMENDATION**


Presently before the Court is the motion to confirm default judgment filed by plaintiff, Clean Harbors Environmental Services, Inc., against defendant, R & R Construction Services, LLC. (Rec. doc. 19). In connection with said motion, an evidentiary hearing went forward on May 17, 2011. (Rec. doc. 26). At the conclusion of that hearing, the Court sought further documents and information from plaintiff which resulted in the filing of a supplemental memorandum by Clean Harbors Environmental Services, Inc. on June 15, 2011. (Rec. doc. 29).

On September 22, 2010, Clean Harbors Environmental Services, Inc., hereinafter referred to as plaintiff, filed a complaint for damages against R & R Construction Services, LLC. (Rec. doc. 1).

In that pleading, plaintiff alleged that on or about June 23, 2010, it entered into an agreement with defendant, R & R, for the construction of a mobile catering unit.  It was further alleged that this agreement was breached by the defendant in that the catering unit was to have been available for pickup on or before July 26, 2010 and, in fact, it was not.  Plaintiff further alleged that the full contractual price for the unit was paid to defendant in accordance with the agreement of the parties.  As of the date that the complaint was filed, and despite demand, the mobile catering unit had not been delivered to plaintiff by defendant.

Plaintiff has sought damages, attorneys' fees and costs as well as pre-judgment and post-judgment interest from its date of loss.  Additionally, plaintiff sought a writ of sequestration from the Court, arguing that it owned the base trailer upon which the mobile catering unit had been constructed.  Alleging that it had an ownership right in the trailer base as well as the fact that it had paid defendant the full purchase price for the unit, plaintiff sought and was granted a writ of sequestration, pursuant to LSA-C.C.P. Art. 3571, on October 1, 2010. (Rec. docs. 4, 5).  On October 29, 2010, plaintiff filed a motion to amend/correct the order on the initial motion for writ of sequestration, which was granted by the Court on the same day.  (Rec. docs. 6, 7). Plaintiff, therefore, additionally has sought that the writ of sequestration be released, that it be placed in formal possession

2

of the unit in question and that the security of $ 5,000.00 which was tendered in connection with the writ of sequestration be returned to it.

On December 10, 2010, defendant filed a motion for extension of time within which to plead which the Court granted on December 14, 2010, allowing defendant twenty-one additional days to file responsive pleadings.  (Rec. docs. 9, 10).  No pleadings were filed on defendant's behalf and, ultimately, counsel moved to withdraw from defendant's representation.  (Rec. doc. 15).  Counsel's motion to withdraw was granted on January 19, 2011.  (Rec. doc. 17).

On January 14, 2011, a motion for entry of default was filed by plaintiff.  (Rec. doc. 12).  That motion was granted by the Court on January 20, 2011. (Rec. doc. 18).  The current motion for default judgment was filed on April 11, 2011. (Rec. doc. 19).

At the evidentiary hearing to confirm the default judgment, the Court received testimony from Mr. Don Caldera, the general manager of industrial services, who is employed by plaintiff.  Mr. Caldera characterized plaintiff as an industrial service and environmental company that works emergency events like the Deep Water Horizon disaster where many workers are deployed to handle quickly evolving issues.  Since the emergencies that the company deals with are generally in remote locations where people need to be kept on the job site to maintain continuity, the company was interested in a unit such as the one in question in order to feed

workers at the job locations.

Mr. Caldera identified the contract for building the trailer and the list of materials to be used as Exhibit A-1 to plaintiff's motion for default judgment. (Rec. doc. 19-4, pp. 4-5).  In connection therewith, Mr. Caldera testified that plaintiff delivered a basic trailer to defendant which was to be converted into the unit plaintiff wanted for the price of $65,000.  The trailer was delivered to defendant in July, 2010 with the understanding that the unit was to have been completed and ready for delivery back to plaintiff within four weeks thereafter.  The Court has verified through documentation annexed to plaintiff's supplemental memorandum in support of its motion for default judgment that the $65,000 price agreed upon was tendered to defendant in installments as contemplated by the agreement of the parties.  (Rec. doc. 29).

When plaintiff failed to receive reports on the status of the construction, Mr. Caldera checked on the progress of the project in August, 2010.  He found that work was being done on the unit but that it was not near completion and, in fact, a completed unit was never tendered to plaintiff at any point.  When a writ of sequestration was finally obtained, the unit was seized by the U.S. Marshal and was turned over to plaintiff for storage and safekeeping.

Once the unit was in plaintiff's possession, it was inspected

and found not to be complete.  The services of an individual familiar with the trailer catering business, i.e., Mr. J. Keith Kepper, were obtained to verify that the unit was incomplete and to work up an estimate as to what it would cost to finish the project. Plaintiff was advised by Mr. Kepper that it would cost another $3,920.00 to bring the unit up to specifications.  (Exhibit C-1.)(Rec. doc. 19-4, p. 15).  A second, supplemental estimate was obtained because it was thought that the burners on the unit would be insufficient; an added $2,000 would be needed to deal with this issue.  (Exhibit C-2)(Rec. doc. 19-4, p. 16).

Mr. Caldera testified that plaintiff has worked on the Deep Water Horizon disaster and other projects since July, 2010. Plaintiff had to hire other caterers to do what the trailer was meant to have accomplished.  Clean Harbors alleges that it had to spend an added $30,000 because it did not have the unit it contracted to receive.  Plaintiff, therefore, seeks $5,920.00 in actual damages, itemized on Exhibits C-1 and C-2; $30,000 in consequential damages, based upon additional costs to feed the workers, is also sought.

The Court begins its analysis with a review of the document identified as the agreement between the parties, i.e., Exhibit A-1. That document was signed by someone on behalf of the defendant, although it remains unsigned by anyone on behalf of plaintiff. However, as performance was begun and payments were tendered in

accordance with the "draw schedule" set forth in that document, the
Court finds that this exhibit, referred to as the "Contractor
Agreement for Clean Harbors", dated June 23, 2010, is a valid,
enforceable contract between plaintiff and defendant.

The Court next notes that the contract in question fails to
contain any provision for attorneys' fees in the event that the
agreement was breached.  The so-called "American Rule" prohibits
fee shifting in most cases.  <u>Chambers v. Nasco, Inc.</u>, 501 U.S. 32,
111 S.Ct. 2123 (1991).  As this matter is brought as a diversity
suit, the Court looks to Louisiana law to determine whether an
award of attorneys' fees is proper.   <u>Erie R. Co. v. Tompkins</u>, 304
U.S. 64, 58 S.Ct. 817 (1938).  Absent a contractual agreement or a
statutory provision, attorneys' fees may not be awarded for a
breach of contract under Louisiana law pursuant to LSA-C.C. Art.
1997.  <u>Sher v. Lafayette Ins. Co.</u>, 988 So.2d 186, 201 (La. 2008).

The failure to complete the unit within the prescribed period
of time does not, <u>per se</u>, equate to bad faith or fraud.  <u>Delaney v.
Whitney National Bank</u>, 703 So.2d 709, 718 (La. App. 4th Cir. 1997),
<u>writ</u> <u>denied</u>, 715 So.2d 1211 (La. 1998).  And, indeed, fraud is not
alleged in the complaint filed by plaintiff.  While bad faith is
stated in a conclusory manner in the complaint based upon the
failure to complete and/or deliver the unit to plaintiff, the Court
heard no testimony which would allow a finding a bad faith herein.
Under Louisiana law, bad faith requires that a party act

"intentionally and maliciously". LSA-C.C. Art. 1997, comment "b".
Bad faith generally implies actual or constructive fraud or a
refusal to fulfill contractual obligations, not an honest mistake
as to actual rights or duties.   Here, there is no showing of
deliberate malice on the part of the defendant and therefore the
Court cannot make a finding that defendant is guilty of bad faith.
Delaney, supra; Adams v. First National Bank of Commerce, 644 So.2d
219, 222-23 (La. App. 4th Cir. 1994), writ denied, 649 So.2d 411
(La. 1995).   Furthermore, even if bad faith were established,
attorneys' fees do not accrue under Article 1997.   Sher, supra.
Plaintiff has not cited the Court to any other basis for an award
of attorneys' fees and the Court will not speculate where other
statutory authority might be.

Insofar as consequential damages in the amount of $30,000 are
concerned, the contract specifically provides that "[n]o penalties
will be assessed if the project runs over this time period",
meaning past July 23, 2010.   In any event, the evidence presented
to the Court on consequential damages constitutes speculation,
albeit conservative, as to how much additional profit plaintiff
might have made if the unit had been completed in July, 2010 as
originally contemplated.   The Court will not recommend an award of
damages based upon speculation, particularly in light of the clause
in the contract prohibiting the award of penalties for non-timely
compliance with the terms of the agreement.   In this case,

consequential damages are merely penalties under another name.

As to actual damages, the Court notes that the scope of the contract in question is less than clear.  The document provides for the "fabrication of a mobile catering unit used for boiling and grilling food."  The contract then notes that the trailer will include the "following materials and accessories" which are then listed.  However, there are no specifications annexed indicating how those materials are to be installed.  Plaintiff then presents an estimate from J. Keith Kepper, President of Design Fab, Inc., which talks about "repairs needed regarding the completion of the above referenced trailer."  What is unclear is whether the "repairs" are needed because of a design flaw in the unit, inferior workmanship or for some other reason.  Mr. Kepper did not testify before the Court and it is not clear why this scope of "repair" work is needed since the scope of the original work was not set forth in the agreement between the parties, only the materials to be installed.

Nevertheless, it appears clear that the unit was never completed as contemplated by the parties.  Defendant failed at any point to tender the unit to plaintiff as completed.  While it is unclear whether the added work to be performed by Mr. Kepper's company was originally contemplated in the contract between plaintiff and defendant, the Court will, nevertheless, recommend an award to plaintiff in the sum of $3,920.00 as the amount necessary

8

to make the unit functional.

As to the additional $2,000 set forth in Exhibit C-2, Mr. Kepper states that it is:

> "[k]ind of hard to give an accurate estimate on replacing burners and refurbing to gain enough air flow. My best guess would not exceed $2000 to do that.  On the assumption that the burners are adequate and all we need is better ventilation I would say that work wouldn't exceed $1,000."

(Rec. doc. 19-4, p. 16).

No one testified at the evidentiary hearing as to what was wrong with the burners which required replacement or refurbishing. Because this item contains sums based upon speculation, the Court declines to recommend an award on any amount set forth in Exhibit C-2.  Even the amount allegedly itemized for ventilation is not a sum certain.

Lastly, it will be recommended that pre-judgment interest be awarded herein.  This is a diversity action and the Court will apply Louisiana law with respect to pre-judgment interest.  Huggs, Inc. v. LPC Energy, Inc., 889 F.2d 649, 651 (5th Cir. 1989).  Under Louisiana law, "[l]egal interest shall attach from date of judicial demand, on all judgments, sounding in damages, "ex delicto," which may be rendered by any of the courts." LSA-R.S. 13:4203.  However, a breach of contract case does not automatically qualify as an action "ex delicto", for it is the nature of the duty breached that should determine whether the action is in tort or contract.  Kozan v. Comstock, 270 F.2d 839, 844 (5th Cir. 1959).  In Huggs, supra,

the Court distinguished between an active and a passive breach of a contract in determining whether pre-judgment interest was appropriate.  In that case, the Fifth Circuit found that where a person neglects to do what he is obligated to do under a contract, he has committed a passive breach and that such action did not qualify as "ex delicto" as contemplated by the statute.  However, if someone performed his obligations in a negligent manner, this was an active breach and, therefore, did qualify as a claim "ex delicto".  Huggs, 889 F.2d at 655.  In the case currently before the Court, the claim at issue is not one "ex delicto".

Louisiana case law provides that "... interest is recoverable on debts arising ex contractu from the time they become due, unless otherwise stipulated".  Corbello v. Iowa Production, 850 So.2d 686, 706 (La. 2003).  The rationale behind this is that prejudgment interest is meant to fully compensate the injured party for the use of funds to which he is entitled but does not enjoy because the defendant has maintained control over the funds during the pendency of the action. Id.  Here, plaintiff essentially overpaid defendant by the sum of $3,920.00, the amount necessary to make the unit functional when defendant did not satisfy the terms of its contract with plaintiff.  Accordingly, the Court finds that interest on this sum commenced running as of the date of the last contractual payment which was August 27, 2010.  It is on this date that the overpayment for which plaintiff should be compensated occurred.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that there be judgment herein in favor of plaintiff, Clean Harbors Environmental Services, Inc., and against defendant, R & R Construction Services, LLC, in the sum of Three Thousand Nine Hundred Twenty and 00/100 Dollars, together with legal interest from August 27, 2010 until paid, and all costs of this proceedings.

IT IS FURTHER RECOMMENDED that the writ of sequestration issued herein be dissolved and that plaintiff, Clean Harbors Environmental Services, Inc., be placed in legal possession of the seized property.

IT IS FURTHER RECOMMENDED that the $5,000 security posted by Clean Harbors Environmental Services Inc. in connection with this Court's order of sequestration be returned to plaintiff.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

New Orleans, Louisiana, this <u>12th</u> day of <u>        October        </u>,

2011.

<u>                                        </u>
ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE